ILAN LAVIAN (SBN 354592)
ilan@lavianpc.com
**LAVIAN, P.C.**
10680 W. Pico Blvd., Suite 270
Los Angeles, CA 90064
Telephone: (213) 212-3036

CHRISTOPHER GOLD (pro hac vice forthcoming)
chris@chrisgoldlaw.com
**GOLD LAW, P.A.**
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139-3154
Telephone: (305) 900-4653

*Attorneys for Plaintiff Alicia Creek,*
*individually and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

ALICIA CREEK, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TAX RISE INC., a California corporation, doing business as "TAXRISE"; and ESSAM ABDULLAH, an individual, also known as "SAM PRICE,"

Defendants.

Case No. 8:26-cv-03258

**CLASS ACTION COMPLAINT FOR:**

**(1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227; AND**

**(2) VIOLATIONS OF TEX. BUS. & COM. CODE §§ 302.101 AND 302.302**

**DEMAND FOR JURY TRIAL**

Plaintiff Alicia Creek ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendants Tax Rise Inc., doing business as "TaxRise" ("Tax

Rise”), and Essam Abdullah, also known as “Sam Price” (“Abdullah,” and together with Tax Rise, “Defendants”) and alleges as follows upon personal knowledge as to her own acts and experiences, and upon information and belief, including the investigation of counsel, as to all other matters.

## NATURE OF THE ACTION

1. This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 and original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as further alleged in Paragraphs 8–12 below.

2. This is a putative class action under the Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227) (the “TCPA”), and its implementing regulations, and under Chapter 302 of the Texas Business and Commerce Code.

3. Tax Rise sells tax-relief services to consumers nationwide. This action arises from Tax Rise’s practice of contacting consumers’ cellular telephones with prerecorded voicemail messages and telemarketing text messages promoting those services—and continuing to contact them after they tell Tax Rise to stop.

4. Plaintiff has never been a Tax Rise customer and never asked Tax Rise to contact her. Yet over three days in June 2026, Tax Rise contacted Plaintiff’s cellular telephone at least eight times, from seven different telephone numbers, including five calls that left prerecorded voicemail messages.

5. On June 16, 2026, Plaintiff answered a Tax Rise text message with a plain request: “Well don’t please stop contacting me.” Tax Rise did not stop. About an hour later, Plaintiff replied “STOP”—the very word Tax Rise’s own text messages told her to use. Tax Rise still did not stop. After Plaintiff’s first request, Tax Rise contacted her at least five more times, including three prerecorded voicemail messages left after she replied “STOP.”

6. Tax Rise and its chief executive officer, Abdullah, have been sued repeatedly under the TCPA, and a federal court has entered a TCPA judgment against Abdullah personally on a record that included the failure to honor a consumer's do-not-call request. Defendants' unlawful telemarketing nonetheless continued, as Plaintiff's experience in June 2026 shows, and, on information and belief, it continues today.

7. Plaintiff brings this action on behalf of herself and classes of similarly situated consumers to recover the statutory damages Congress provided—up to $500 per violation, which the Court may increase to up to $1,500 per violation for knowing or willful violations—together with injunctive relief. 47 U.S.C. §§ 227(b)(3), 227(c)(5). On behalf of a class of Texas recipients, Plaintiff also seeks civil penalties of up to $5,000 per violation under Tex. Bus. & Com. Code §§ 302.101 and 302.302, because, on information and belief, Tax Rise made telephone solicitations to Texas consumers without holding the registration certificate that Texas law requires.

## JURISDICTION AND VENUE

8. This Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

9. This Court also has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed classes exceed 100 members; at least one member of the proposed classes is a citizen of a State different from a Defendant—Plaintiff is a citizen of Texas, and, on information and belief, each Defendant is a citizen of California; and, on information and belief, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. This Court has supplemental jurisdiction over the Texas state-law claim under 28 U.S.C. § 1367(a) because that claim arises from the same nucleus of operative fact as the federal claims: Tax Rise's telemarketing campaign.

11. This Court has personal jurisdiction over Tax Rise because it is a California corporation with its principal place of business in Irvine, Orange County, California, where it is at home. This Court has personal jurisdiction over Abdullah because, on information and belief, he is domiciled in California and directs Tax Rise's operations—including the telemarketing alleged in this Complaint—from Tax Rise's Irvine headquarters.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of California and at least one Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including that, on information and belief, Tax Rise conceived, directed, and transmitted the calls and text messages at issue from its offices in Irvine, California. Assignment to the Southern Division is appropriate because Tax Rise resides in Orange County.

## PARTIES

13. Plaintiff Alicia Creek is a natural person and a resident and citizen of Dallas, Texas. At all relevant times, Plaintiff was the customary user of the cellular telephone number ending in 6926 (the "Number"), which bears a Texas area code.

14. During the relevant period, Plaintiff used the Number as her personal cellular telephone. The Number was assigned to a cellular telephone service, was not associated with any business, and was used by Plaintiff for personal, family, and household purposes. Plaintiff was accordingly a "residential telephone subscriber" within the meaning of the TCPA and its implementing regulations.

15. Plaintiff registered the Number on the National Do Not Call Registry on June 17, 2026.

16. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

17. Defendant Tax Rise Inc. is a California corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California 92612, in Orange County. Tax Rise markets tax-relief and tax-resolution services to consumers under the "TaxRise" brand, including through its website, taxrise.com. Tax Rise is a "person" as defined by 47 U.S.C. § 153(39).

18. Defendant Essam Abdullah is an individual who is, and at all relevant times was, the chief executive officer of Tax Rise and, on information and belief, its owner. According to the Statement of Information Tax Rise filed with the California Secretary of State on December 11, 2025, Abdullah is Tax Rise's Chief Executive Officer, its Secretary, and its sole director. In a prior TCPA action in this District, in which he was sued as "Essam Abdullah a.k.a. Sam Price," Abdullah and Tax Rise answered that "Essam Abdullah is an individual and the owner and CEO of the Defendants." Defs.' Answer ¶ 16, *Sadr-Arhami v. Tax Rise Inc.*, No. 2:20-cv-06862-DSF-PVC (C.D. Cal. Sept. 7, 2020), ECF No. 13. In an April 14, 2025, press release, Tax Rise identified Abdullah as its "founder and CEO." On information and belief, Abdullah resides in California.

19. On information and belief, Abdullah personally directs and controls Tax Rise's marketing operations, including its outbound telemarketing; personally authorized and approved the use of prerecorded voice messages, text-message campaigns, and rotating caller-identification numbers to solicit consumers; and personally set Tax Rise's policies and practices, or lack of them, for recording and honoring consumers' do-not-call requests. On information and belief, Abdullah had direct, personal participation in, and personally authorized, the conduct alleged in this Complaint, and he is personally liable for it.

20. Unless otherwise indicated, the use of Tax Rise's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns,

principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Tax Rise.

21. At all relevant times, each Defendant acted as the agent, servant, employee, or joint venturer of each other Defendant, acted within the course and scope of that relationship, and ratified the conduct of each other Defendant. Each Defendant is directly liable for the calls and text messages it placed or transmitted, and vicariously liable, under federal common-law agency principles, for calls and text messages placed or transmitted on its behalf by third parties.

## THE TELEPHONE CONSUMER PROTECTION ACT

### A. The TCPA's Restrictions on Prerecorded Calls to Cellular Telephones

22. In enacting the TCPA, Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, § 2(5)–(6), 105 Stat. 2394, 2394 (1991) (codified at 47 U.S.C. § 227 note).

23. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

24. The Federal Communications Commission's (the "FCC") implementing regulations prohibit initiating "any telephone call that includes or introduces an advertisement or constitutes telemarketing, using . . . an artificial or prerecorded voice," to a cellular telephone number, "other than a call made with the prior express written consent of the called party," subject to exceptions not relevant here. 47 C.F.R. § 64.1200(a)(2) (47 C.F.R. § 64.1200 promulgated at 68 Fed. Reg. 44,177 (July 25, 2003), as amended). "Prior express written consent" requires "an agreement, in

writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using . . . an artificial or prerecorded voice." *Id.* § 64.1200(f)(9).

25. A prerecorded voicemail message is a "call" under the TCPA, whether it is left after a call the recipient does not answer or delivered by "ringless," direct-to-voicemail technology. The FCC has ruled that "'ringless voicemail' to wireless phones requires consumer consent because it is a 'call' made using an artificial or prerecorded voice and thus is covered by section 227(b)(1)(A)(iii) of the 1991 Telephone Consumer Protection Act (TCPA)." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Petition for Declaratory Ruling of All About the Message, LLC*, CG Docket No. 02-278, Declaratory Ruling and Order, 37 FCC Rcd 13675, ¶ 1 (2022). A text message is likewise a "call" within the meaning of the TCPA. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

26. Section 227(b)(3) creates a private right of action for violations of Section 227(b) and the regulations prescribed under it, and authorizes an action to enjoin such violations, to recover the greater of actual monetary loss or $500 in damages for each violation, or both. If the defendant willfully or knowingly violated Section 227(b) or its regulations, the court may, in its discretion, increase the award to not more than three times that amount—up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

**B. The TCPA's Do-Not-Call and Caller-Identification Protections**

27. Section 227(c) of the TCPA directed the FCC to initiate a rulemaking proceeding concerning the need "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

28. Among the regulations the FCC promulgated under Section 227(c) is 47 C.F.R. § 64.1200(d), which provides that "[n]o person or entity shall initiate any . . .

call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity," and which prescribes minimum standards for those procedures.

29. Those minimum standards require, among other things: (a) "a written policy, available upon demand, for maintaining a do-not-call list," 47 C.F.R. § 64.1200(d)(1); (b) that personnel engaged in telemarketing "be informed and trained in the existence and use of the do-not-call list," *id.* § 64.1200(d)(2); (c) that a telemarketer receiving a do-not-call request "record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," and honor the request "within a reasonable time from the date such request is made," a period that "may not exceed ten (10) business days from the receipt of such request," *id.* § 64.1200(d)(3); and (d) that the telemarketer maintain a record of the request, which "must be honored for 5 years from the time the request is made," *id.* § 64.1200(d)(6). If do-not-call requests are recorded or maintained by a third party, the entity on whose behalf the call is made "will be liable for any failures to honor the do-not-call request." *Id.* § 64.1200(d)(3).

30. The same rules require anyone making a call for telemarketing purposes to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

31. The protections of 47 C.F.R. § 64.1200(d) "are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

32. Section 227(c)(5) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," and

authorizes injunctive relief and recovery of actual monetary loss or up to $500 in damages for each violation, whichever is greater. If the defendant willfully or knowingly violated the regulations, the court may, in its discretion, increase the award to not more than three times that amount—up to $1,500 per violation. 47 U.S.C. § 227(c)(5).

33. Unwanted telemarketing calls and text messages inflict a concrete injury: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

**THE TEXAS TELEPHONE SOLICITATION REGISTRATION STATUTE**

34. Chapter 302 of the Texas Business and Commerce Code regulates "telephone solicitation," defined as "a call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7) (as amended effective Sept. 1, 2025). A "seller" is "a person who makes a telephone solicitation on the person's own behalf," *id.* § 302.001(5); an "item" is "property or a service," *id.* § 302.001(1); and a "purchaser" includes a person who "is solicited to become or becomes obligated for the purchase or rental of an item," *id.* § 302.001(3)(A).

35. Section 302.101 provides that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

36. In a civil proceeding alleging a violation of Chapter 302, "a person who claims an exemption from the application of this chapter has the burden of proving the exemption." Tex. Bus. & Com. Code § 302.051(a).

37. "A person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation." Tex. Bus. & Com. Code § 302.302(a). The party bringing the action "also is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees." *Id.* § 302.302(d).

## FACTUAL ALLEGATIONS

### A. Tax Rise's Telemarketing Campaign

38. On information and belief, Tax Rise markets its tax-relief services to consumers throughout the United States from its offices in Irvine, California, and a core component of that marketing is high-volume outbound telemarketing: prerecorded voicemail messages and text messages sent from a rotating pool of telephone numbers bearing the 949 area code, each directing consumers to call Tax Rise or to schedule a consultation at taxrise.com.

39. Plaintiff has never been a customer of Tax Rise, has never had any business relationship with Tax Rise, has never provided her telephone number to Tax Rise, has never submitted any form or request to Tax Rise, and has never given Tax Rise prior express invitation or permission—let alone prior express written consent—to call or text her.

### B. Tax Rise's Calls and Text Messages to Plaintiff

40. Between June 16 and June 18, 2026, Tax Rise contacted the Number at least eight times—five calls that left prerecorded voicemail messages and three text messages—from seven different telephone numbers: (949) 669-0511, (949) 649-8462, (949) 693-6029, (949) 775-6083, (949) 804-3747, (949) 804-9676, and (949) 787-4481. Each call and text message identified Tax Rise (as "TaxRise" or "Tax Rise") or its website, and each urged Plaintiff to call Tax Rise, to schedule a consultation, or to visit Tax Rise's website. The times alleged below are Central Time, as displayed on Plaintiff's telephone.

41. On or about June 16, 2026, at approximately 12:36 p.m., Tax Rise sent the following text message to the Number from (949) 669-0511:

> "[TaxRise] Hi Alicia, just following up from yesterday - I'd love to connect regarding your tax consultation when you have a few minutes. Call me at (949) 203-7460 or schedule online: taxrise.com/schedule. Reply STOP to STOP"

42. Plaintiff had not requested any "tax consultation" from Tax Rise. The text message did not identify the individual sender by name.

43. At 12:36 p.m., Plaintiff replied: "Well don't please stop contacting me." Any reasonable person would understand Plaintiff's reply as a request that Tax Rise stop contacting her. It was a do-not-call request under 47 C.F.R. § 64.1200(d)(3).

44. Also at approximately 12:36 p.m., Tax Rise called the Number from (949) 775-6083 and left a 15-second prerecorded voicemail message. The transcription of the message displayed on Plaintiff's telephone, which begins mid-sentence, reads: "203-769-7 or visit tax rise.com for additional information. Call 855-909-4098 to opt out."

45. Tax Rise did not stop. After Plaintiff's reply, Tax Rise sent the identical text message to the Number again from (949) 669-0511—"[TaxRise] Hi Alicia, just following up from yesterday . . ."—again without identifying the individual sender.

46. At approximately 1:16 p.m., Tax Rise called the Number from (949) 693-6029. When Plaintiff did not answer, Tax Rise left a 26-second prerecorded voicemail message, timed at 1:17 p.m., the displayed transcription of which reads: "Hi, it's Edith from Tax Rise. Just reaching out again in case you had questions about your IRS notices. I know things can pile up, so feel free to contact me at 949-203-76…" (Plaintiff's telephone truncated the remainder of the transcription.)

47. On or about June 16, 2026, Tax Rise also sent the following text message to the Number from (949) 649-8462:

> "Hi Alicia, this is James with TaxRise - I just tried reaching you about your tax situation but your phone may be screening unknown numbers, so my call might've shown up as spam. I really can help - call me back at 949-649-4954 or grab a time: https://www.taxrise.com/schedule. Reply STOP to opt out."

48. At 1:43 p.m., Plaintiff replied "STOP" to (949) 669-0511 and "Stop" to (949) 649-8462—the very word Tax Rise's text messages had instructed her to use. Each reply was a do-not-call request.

49. Tax Rise still did not stop. At approximately 5:05 p.m., Tax Rise called the Number from (949) 804-3747 and left a 16-second prerecorded voicemail message, the displayed transcription of which, beginning mid-sentence, reads: "92037697 or visit tax rise.com for additional information. Call 855-909-4098 to opt out."

50. On or about June 17, 2026, at approximately 12:02 p.m., Tax Rise called the Number from (949) 804-9676 and left a 25-second prerecorded voicemail message, the transcription of which displayed on Plaintiff's telephone reads:

> "Hi, Tax Rise reaching out. If it's easier, we can keep this to a brief call to understand your tax situation and outline possible next steps. Call us at 949-461-2860 or book an appointment at your earliest convenience. Thanks. Call 855-909-4098 to opt out."

51. On or about June 18, 2026, at approximately 11:29 a.m., Tax Rise called the Number from (949) 787-4481 and left a 20-second prerecorded voicemail message, the transcription of which displayed on Plaintiff's telephone reads:

> "Hey, Sarah with TaxRise here. I tried calling you earlier to discuss the tax relief form you submitted. Call me back at (949) 269-7184 or visit TaxRise.com for more information. Thank you. Call (855) 909-4098 to opt out."

52. As alleged in Paragraph 39, Plaintiff never submitted any “tax relief form” to Tax Rise.

**C. Tax Rise’s Voicemail Messages Were Prerecorded**

53. On information and belief, each of Tax Rise’s five voicemail messages was delivered using an artificial or prerecorded voice. Among other things: (a) four of the five messages ended with the same tag—“Call 855-909-4098 to opt out” (or “Call (855) 909-4098 to opt out”)—directing Plaintiff to a toll-free number different from both the number that placed the call and the callback number the message provided—a separate toll-free opt-out number of the type the FCC’s rules require artificial or prerecorded-voice telemarketing messages left on voicemail to provide, *see* 47 C.F.R. § 64.1200(b)(3); (b) as transcribed, the messages left at approximately 12:36 p.m. and 5:05 p.m. on June 16, 2026, from two different telephone numbers, ended with the identical words “. . . or visit tax rise.com for additional information. Call 855-909-4098 to opt out.”; (c) the messages were short (15 to 26 seconds), generic, and scripted; they did not respond to anything Plaintiff had said, including her requests that Tax Rise stop; and the June 18 message referred to a “tax relief form you submitted” that Plaintiff never submitted; and (d) the five messages were left from five different telephone numbers in less than 48 hours, consistent with an automated platform that rotates caller-identification numbers.

54. Each of Tax Rise’s calls and text messages to Plaintiff was “telemarketing” and a “telephone solicitation” within the meaning of 47 C.F.R. § 64.1200(f)(13) and (f)(15), because each was initiated “for the purpose of encouraging the purchase . . . of . . . services”—Tax Rise’s tax-relief services.

**D. Tax Rise Ignored Plaintiff’s Do-Not-Call Requests**

55. After Plaintiff’s first request at 12:36 p.m. on June 16, 2026, Tax Rise contacted the Number at least five more times: (a) the repeated “[TaxRise]” text message from (949) 669-0511; (b) the 1:16 p.m. call and prerecorded voicemail from

(949) 693-6029; (c) the 5:05 p.m. call and prerecorded voicemail from (949) 804-3747; (d) the June 17 call and prerecorded voicemail from (949) 804-9676; and (e) the June 18 call and prerecorded voicemail from (949) 787-4481. The last three came after Plaintiff had replied "STOP" to two different Tax Rise numbers. All of them were received within a single 12-month period—indeed, within approximately 48 hours.

56. A do-not-call request applies to "the particular entity making the call (or on whose behalf a call is made)." 47 C.F.R. § 64.1200(d)(5). Plaintiff's requests to two Tax Rise numbers therefore obligated Tax Rise to stop all of its telemarketing to her, from every number it uses.

57. Tax Rise was required to record each of Plaintiff's requests "at the time the request [was] made." 47 C.F.R. § 64.1200(d)(3). The regulation's ten-business-day period is a ceiling, not a floor. Tax Rise's own text messages invited "STOP" replies, and Plaintiff sent her requests to the very numbers Tax Rise used to contact her.

58. On information and belief, Tax Rise (a) has not instituted a written do-not-call policy, available upon demand, as required by 47 C.F.R. § 64.1200(d)(1); (b) has not informed and trained its personnel, and its agents' personnel, in the existence and use of an internal do-not-call list, as required by 47 C.F.R. § 64.1200(d)(2); and/or (c) fails to record and honor do-not-call requests, as required by 47 C.F.R. § 64.1200(d)(3) and (d)(6). That Tax Rise kept contacting Plaintiff after her requests—from five different Tax Rise numbers, with messages in the names of different Tax Rise representatives, including "Edith" and "Sarah"—indicates that Tax Rise maintains no effective internal do-not-call list, or does not use one.

59. Because procedures meeting the minimum standards of 47 C.F.R. § 64.1200(d) are a precondition to initiating any call for telemarketing purposes, each of Tax Rise's telemarketing calls and text messages to Plaintiff violated that regulation—and, at an absolute minimum, each of the at least five contacts made after Plaintiff's first request did.

**E. Tax Rise's Failure to Identify Its Callers**

60. At least three of Tax Rise's telemarketing contacts did not provide the name of the individual caller, as 47 C.F.R. § 64.1200(d)(4) requires: the two "[TaxRise]" text messages sent to the Number on June 16, 2026, from (949) 669-0511, and the June 17, 2026, voicemail message from (949) 804-9676, which said only "Hi, Tax Rise reaching out."

**F. Tax Rise's Unregistered Telephone Solicitations to Texas**

61. Plaintiff received each of Tax Rise's calls and text messages on a telephone number bearing a Texas area code, while she was located in Texas.

62. Each of Tax Rise's at least eight calls and text messages to Plaintiff was a "telephone solicitation" under Tex. Bus. & Com. Code § 302.001(7): a call or transmission, including a text message, initiated by Tax Rise to induce Plaintiff to purchase its tax-relief services. Plaintiff was a "purchaser" because Tax Rise solicited her to become obligated for the purchase of those services. *Id.* § 302.001(3)(A).

63. On information and belief, at no time when it made telephone solicitations to Plaintiff and the members of the Texas Registration Class did Tax Rise hold a registration certificate issued by the Texas Secretary of State under Tex. Bus. & Com. Code § 302.101.

**G. Plaintiff's Injuries**

64. Plaintiff was harmed by Tax Rise's calls and text messages. They invaded her privacy, intruded upon her seclusion, and annoyed and harassed her; they occupied her telephone line and her voicemail box; and they wasted her time, including the time she spent reading and reviewing Tax Rise's messages and voicemails, replying to Tax Rise, and trying to make the contacts stop.

**H. Defendants Have Long Been on Notice**

65. Defendants have long been on notice of the TCPA's requirements and of claims that their telemarketing practices violate it. Tax Rise has been sued repeatedly

for similar conduct, including in (a) *Newman v. Fidelity Tax Relief LLC*, No. 8:19-cv-01282 (C.D. Cal. filed June 26, 2019), in which Tax Rise was a named defendant and the plaintiff alleged that he received telemarketing text messages and kept receiving them after he asked to be removed from the defendants' list; (b) *Watkins v. Tax Rise, Inc.*, No. 8:20-cv-00029 (C.D. Cal. filed Jan. 7, 2020), which alleged that Tax Rise places calls and sends text messages to consumers without the prior express written consent the TCPA requires; (c) *Sadr-Arhami v. Tax Rise Inc.*, No. 2:20-cv-06862-DSF-PVC (C.D. Cal. filed July 30, 2020), a putative class action alleging negligent and willful violations of the TCPA against Tax Rise and Abdullah, among others; (d) *McClinton v. Tax Rise, Inc.*, No. 5:22-cv-00298 (W.D. Tex. filed Mar. 25, 2022), which alleged that Tax Rise caused prerecorded voice messages to be transmitted to the plaintiff's cellular telephone without the required express written consent; and (e) *Grzybowski v. Tax Rise, Inc.*, No. 3:22-cv-01611 (M.D. Pa. filed Oct. 13, 2022), which asserted claims under the TCPA.

66. Fidelity Tax Relief LLC—which joined Tax Rise and Abdullah in a single answer in *Sadr-Arhami* admitting that Abdullah is "the owner and CEO of the Defendants," Defs.' Answer ¶ 16, *Sadr-Arhami*, ECF No. 13—has also been sued under the TCPA, including in *Donaca v. Fidelity Tax Relief LLC*, No. 8:16-cv-00194 (C.D. Cal. filed Feb. 5, 2016), and in *Wolowitsch v. Fidelity Tax Relief LLC*, No. 2:18-cv-05751 (C.D. Cal. filed June 29, 2018), the latter asserting TCPA claims for telemarketing text messages and do-not-call violations.

67. Abdullah himself is the subject of a TCPA judgment. In *Newell v. Optima Advocates, Inc.*, No. 2:18-cv-04183 (E.D. Pa.), the court entered a default judgment of $18,000 against Abdullah, together with Optima Advocates Inc., PH Marketing Group Inc., and Aleevly Inc., for nine calls that violated the TCPA, on the plaintiff's attested showing that the defendants, among other things, "initiated these calls for marketing purposes without maintaining an internal, written do-not-call list policy, available on

demand," and "failed to honor his request not to receive calls from them." Corrected J. Pursuant to Rule 55(b)(2) at 2, *Newell*, No. 2:18-cv-04183 (E.D. Pa. July 17, 2019), ECF No. 13.

68. Despite this notice, Defendants' unlawful telemarketing—including the failure to honor express do-not-call requests—has continued, as Plaintiff's experience demonstrates.

69. On information and belief, Defendants maintain, or have access to, transmission records and dialing- and texting-platform logs reflecting the date, time, content, originating number, target number, and disposition of each outbound call, voicemail, and text message, as well as inbound "STOP" and other opt-out requests, such that the members of the proposed classes are readily identifiable from Defendants' records and those of their vendors.

## CLASS ACTION ALLEGATIONS

70. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as a member and representative of the following classes (the "Robocall Class," the "Internal Do-Not-Call Class," the "Sender-Identification Class," and the "Texas Registration Class," and together, the "Classes"):

> **Robocall Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) received one or more telephone calls to their cellular telephone number, (2) made by or on behalf of Tax Rise, (3) using an artificial or prerecorded voice, including calls that delivered a prerecorded voicemail message.

> **Internal Do-Not-Call Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) received more than one telephone call or text message for telemarketing purposes within any 12-month period, (2) made by or

on behalf of Tax Rise, (3) after having asked Tax Rise, or anyone calling or texting on Tax Rise's behalf, to stop calling or texting, including by replying "stop" or words to that effect.

**Sender-Identification Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) received more than one telephone call or text message for telemarketing purposes within any 12-month period, (2) made by or on behalf of Tax Rise, (3) that did not provide the name of the individual caller or sender.

**Texas Registration Class**: All residents of Texas, or subscribers of a telephone number assigned a Texas area code, who, from four years prior to the filing of this action through the date of class certification, received one or more telephone solicitations made by or on behalf of Tax Rise, at a time when Tax Rise did not hold a registration certificate issued by the Texas Secretary of State under Tex. Bus. & Com. Code § 302.101.

71. Excluded from the Classes are Defendants; any entity in which any Defendant has a controlling interest; Defendants' officers, directors, legal representatives, successors, and assigns; any judge assigned to this case and members of the judge's immediate family and staff; and Plaintiff's counsel. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

72. **Numerosity.** The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, based on the general nature of telemarketing campaigns as well as the aggressive telemarketing Tax Rise directed at Plaintiff, Tax Rise sent prerecorded voicemail messages and telemarketing text messages en masse to thousands of consumers, including hundreds or thousands who asked Tax Rise to stop, hundreds or thousands who received messages that did not name the individual caller, and hundreds or thousands located in Texas. The precise

number of members of each of the Classes is ascertainable from Defendants' and their vendors' records.

73. **Ascertainability.** The Classes are defined by objective criteria, and their members can be identified from Defendants' and their vendors' call and text-message records, lead files, dialing- and texting-platform records, opt-out logs, customer-relationship-management data, and carrier records.

74. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members, including: (a) whether Defendants made, or caused to be made, calls to cellular telephone numbers using an artificial or prerecorded voice; (b) whether Defendants made those calls without prior express written consent; (c) whether the calls and text messages were telemarketing and telephone solicitations; (d) whether Tax Rise instituted the procedures required by 47 C.F.R. § 64.1200(d), including a written policy, personnel training, and the recording of do-not-call requests; (e) whether Tax Rise honored do-not-call requests as the law requires; (f) whether Tax Rise's telemarketing calls and text messages provided the name of the individual caller; (g) whether Tax Rise made telephone solicitations to persons located in Texas without holding the registration certificate required by Tex. Bus. & Com. Code § 302.101; (h) whether Defendants are directly or vicariously liable for the calls and text messages, and whether Abdullah personally participated in or authorized them; (i) whether Defendants' violations were knowing or willful; and (j) the appropriate measure of statutory damages and civil penalties and the scope of injunctive relief.

75. **Typicality.** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and all members of the Robocall Class received prerecorded calls made by or on behalf of Tax Rise to their cellular telephones; Plaintiff and all members of the Internal Do-Not-Call Class received telemarketing calls or text messages after asking Tax Rise to stop; Plaintiff and all members of the Sender-Identification Class received

telemarketing calls or text messages that did not name the individual caller; and Plaintiff, a Texas resident with a Texas telephone number, and all members of the Texas Registration Class received Tax Rise's telephone solicitations while, on information and belief, Tax Rise held no Texas registration certificate. All assert the same claims under the same statutes and regulations, arising from the same course of conduct.

76. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with, and not antagonistic to, those of the Classes, and Plaintiff has retained counsel experienced in consumer class actions and TCPA litigation. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

77. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages and civil penalties available to each member of the Classes are modest relative to the burden and expense of individual litigation; class-wide issues can be resolved through common proof drawn from Defendants' own records; and class treatment will conserve judicial resources, promote consistency and efficiency of adjudication, provide a forum for small claimants, deter illegal activity, and avoid inconsistent adjudications. No unusual manageability difficulties are presented.

78. Defendants have acted or refused to act on grounds generally applicable to the Classes, making final injunctive relief and corresponding declaratory relief appropriate respecting the Classes as a whole under Rule 23(b)(2). On information and belief, the calls and text messages made by Defendants, or by others on their behalf, are substantially likely to continue if an injunction is not entered.

79. **Notice.** Plaintiff contemplates that notice to the members of the Classes will be provided by direct means—including text message, email, and mail—using the contact information in Defendants' and their vendors' records, supplemented as

necessary by publication, in a form and manner the Court approves under Federal Rule of Civil Procedure 23(c)(2).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligent and Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b)

### (On Behalf of Plaintiff and the Robocall Class Against All Defendants)

80. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

81. Defendants made, or caused to be made on their behalf, telephone calls using an artificial or prerecorded voice—including calls that delivered prerecorded voicemail messages—to the cellular telephone numbers of Plaintiff and the other members of the Robocall Class. Tax Rise left at least five such prerecorded voicemail messages on Plaintiff's Number between June 16 and June 18, 2026.

82. The calls were not made for emergency purposes and were made without the prior express consent—much less the prior express written consent—of Plaintiff or the other members of the Robocall Class.

83. Defendants thereby violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii) and (a)(2) each time they made, or caused to be made, such a call. On information and belief, Abdullah personally participated in and authorized these violations.

84. The foregoing violations were, at a minimum, negligent.

85. As a result of Defendants' violations, Plaintiff and each member of the Robocall Class are entitled to an award of the greater of their actual monetary loss or $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

86. Plaintiff and the Robocall Class are also entitled to, and seek, injunctive relief prohibiting Defendants and their affiliates, agents, and other persons or entities acting on Defendants' behalf from making calls using an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number without prior express written consent, pursuant to 47 U.S.C. § 227(b)(3)(A).

87. Based on the facts alleged herein, Plaintiff alleges upon information and belief that discovery will show that Defendants' violations of 47 U.S.C. § 227(b) were knowing and/or willful. Defendants knew that they did not have the prior express written consent of Plaintiff or the other members of the Robocall Class to place prerecorded calls to their cellular telephones; Tax Rise continued placing such calls to Plaintiff after she expressly demanded, more than once and in the very words Tax Rise's messages invited, that the contacts stop; and Defendants continued after being sued repeatedly for the same kind of conduct and after a TCPA judgment was entered against Abdullah personally.

88. As a result of Defendants' knowing and/or willful violations, Plaintiff and each member of the Robocall Class are entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION

## Negligent and Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)

## (On Behalf of Plaintiff and the Internal Do-Not-Call Class Against All Defendants)

89. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs, except those under the preceding Count, as though fully set forth herein.

90. Defendants initiated, or caused to be initiated on their behalf, more than one telephone call or text message for telemarketing purposes within a 12-month period

to Plaintiff and to each member of the Internal Do-Not-Call Class after Plaintiff and each such member had asked Tax Rise to stop. Tax Rise contacted Plaintiff at least five times after her first request.

91. In so doing, Defendants violated the regulations prescribed under 47 U.S.C. § 227(c), including 47 C.F.R. § 64.1200(d), by initiating telemarketing calls and text messages to residential telephone subscribers—including wireless subscribers, 47 C.F.R. § 64.1200(e)—without having instituted the required minimum procedures, including a written do-not-call policy, personnel training, and the recording and honoring of do-not-call requests, and by failing to record do-not-call requests at the time they were made and to honor them within a reasonable time. 47 C.F.R. § 64.1200(d)(1)–(3), (6).

92. The foregoing violations were, at a minimum, negligent.

93. As a result of Defendants' violations, Plaintiff and each member of the Internal Do-Not-Call Class are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

94. Plaintiff and the Internal Do-Not-Call Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

95. Based on the facts alleged herein, Plaintiff alleges upon information and belief that discovery will show that Defendants' violations were knowing and/or willful. Tax Rise received Plaintiff's and the Internal Do-Not-Call Class members' express requests to stop—sent to the very numbers Tax Rise used to contact them, and in Plaintiff's case in the very words Tax Rise's messages invited—and nevertheless continued to call and text them. Defendants knew, or recklessly disregarded, that the recipients had asked them to stop, and continued after a TCPA judgment was entered against Abdullah on a record that included the failure to honor a do-not-call request.

96. As a result of Defendants' knowing and/or willful violations, Plaintiff and each member of the Internal Do-Not-Call Class are entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION

## Negligent and Knowing and/or Willful Violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)(4)

## (On Behalf of Plaintiff and the Sender-Identification Class Against All Defendants)

97. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs, except those under the preceding Counts, as though fully set forth herein.

98. Defendants initiated, or caused to be initiated on their behalf, more than one telephone call or text message for telemarketing purposes within a 12-month period to Plaintiff and to each member of the Sender-Identification Class that did not provide the name of the individual caller, as 47 C.F.R. § 64.1200(d)(4) requires. Plaintiff received at least three such calls and text messages from Tax Rise, as alleged in Paragraph 60.

99. Defendants thereby violated the regulations prescribed under 47 U.S.C. § 227(c), including 47 C.F.R. § 64.1200(d)(4) and (e), each time they made, or caused to be made, such a call or text message.

100. The foregoing violations were, at a minimum, negligent.

101. As a result of Defendants' violations, Plaintiff and each member of the Sender-Identification Class are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

102. Plaintiff and the Sender-Identification Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

103. Based on the facts alleged herein, Plaintiff alleges upon information and belief that discovery will show that Defendants' violations of 47 C.F.R. § 64.1200(d)(4) were knowing and/or willful. Tax Rise deliberately sent telemarketing text messages and prerecorded messages that did not provide the name of the individual caller, from multiple telephone numbers, after years of TCPA litigation against it and against Abdullah.

104. As a result of Defendants' knowing and/or willful violations, Plaintiff and each member of the Sender-Identification Class are entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**FOURTH CAUSE OF ACTION**

**Violations of Tex. Bus. & Com. Code §§ 302.101 and 302.302**

**(On Behalf of Plaintiff and the Texas Registration Class Against Defendant Tax Rise)**

105. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs, except those under the preceding Counts, as though fully set forth herein.

106. Plaintiff received Tax Rise's telephone solicitations in Texas, on a telephone number bearing a Texas area code, while she was located in Texas. Plaintiff is a "purchaser" located in Texas within the meaning of Tex. Bus. & Com. Code § 302.001(3), and, on information and belief, so are the members of the Texas Registration Class.

107. Tax Rise is a "seller" within the meaning of Tex. Bus. & Com. Code § 302.001(5) because it makes telephone solicitations on its own behalf.

108. Each of Tax Rise's calls and text messages to Plaintiff and the members of the Texas Registration Class was a "telephone solicitation" within the meaning of Tex. Bus. & Com. Code § 302.001(7), because each was a call or other transmission,

including a text message, initiated to induce the recipient to purchase Tax Rise's services. Tax Rise made at least eight telephone solicitations to Plaintiff.

109. No exemption from Chapter 302 applies to the telephone solicitations at issue, and Tax Rise bears the burden of proving any exemption it claims. Tex. Bus. & Com. Code § 302.051(a).

110. On information and belief, at all times that Tax Rise made, or caused to be made, telephone solicitations to Plaintiff and the members of the Texas Registration Class, Tax Rise did not hold a registration certificate for the business location from which the solicitations were made. Tax Rise violated Tex. Bus. & Com. Code § 302.101 each time it made, or caused to be made, such a telephone solicitation.

111. Tax Rise is therefore subject to a civil penalty of not more than $5,000 for each violation, Tex. Bus. & Com. Code § 302.302(a), which Plaintiff seeks on behalf of herself and the members of the Texas Registration Class, together with all reasonable costs of prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees, *id.* § 302.302(d).

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendants immediately implement a litigation hold and take affirmative steps to preserve all documents, records, and electronically stored information relevant to the claims and defenses in this action, including: (a) all call logs, text-message transmission records, and voicemail records reflecting communications initiated to Plaintiff, the members of the Classes, or any consumer during the relevant period, including the originating number, recipient number, date, time, duration, and content of each communication; (b) all records identifying the equipment, software, platform, or system used to initiate the communications at issue, including vendor contracts, platform dashboards, configuration settings, and technical documentation; (c) all records of any consent on which Defendants rely, including the date, time, method, and content of any purported consent and the identity

of any lead generator or third party from which it was obtained; (d) all internal do-not-call lists, opt-out logs, suppression lists, and records of consumer requests to stop receiving communications, together with any written policies, training materials, or procedures relating to do-not-call compliance; (e) all records of any registration with the Texas Secretary of State under Tex. Bus. & Com. Code Chapter 302; (f) all marketing materials, scripts, templates, recordings, and campaign records associated with the communications at issue; (g) all records in the possession, custody, or control of any vendor, lead generator, marketing partner, or other third party that Defendants retained or directed to assist in initiating the communications at issue; and (h) all communications, internal or with third parties, concerning the communications at issue, consumer complaints, or compliance with the TCPA or any other telemarketing law. Defendants are on notice that spoliation of any such evidence may result in an adverse-inference instruction, sanctions, or other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally (and, as to the Fourth Cause of Action, against Tax Rise), as follows:

a. An order certifying the Robocall Class, the Internal Do-Not-Call Class, the Sender-Identification Class, and the Texas Registration Class as defined above, appointing Plaintiff as representative of the Classes, and appointing the undersigned as Class Counsel;

b. A declaration that Defendants' conduct violated 47 U.S.C. § 227(b), 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(a) and (d), and that Tax Rise's conduct violated Tex. Bus. & Com. Code § 302.101;

c. An award to Plaintiff and each member of the Robocall Class of the greater of actual monetary loss or $500 in statutory damages for each negligent violation of 47 U.S.C. § 227(b), pursuant to 47 U.S.C. § 227(b)(3)(B);

d. An award to Plaintiff and each member of the Robocall Class of treble statutory damages of up to $1,500 for each knowing and/or willful violation of 47 U.S.C. § 227(b), pursuant to 47 U.S.C. § 227(b)(3);

e. An award to Plaintiff and each member of the Internal Do-Not-Call Class and the Sender-Identification Class of up to $500 in statutory damages for each negligent violation of the regulations prescribed under 47 U.S.C. § 227(c), pursuant to 47 U.S.C. § 227(c)(5)(B);

f. An award to Plaintiff and each member of the Internal Do-Not-Call Class and the Sender-Identification Class of treble statutory damages of up to $1,500 for each knowing and/or willful violation of the regulations prescribed under 47 U.S.C. § 227(c), pursuant to 47 U.S.C. § 227(c)(5);

g. An award to Plaintiff and each member of the Texas Registration Class, against Tax Rise, of civil penalties of up to $5,000 for each violation of Tex. Bus. & Com. Code § 302.101, together with all reasonable costs of prosecuting this action, including court costs, investigation costs, deposition expenses, witness fees, and attorney’s fees, pursuant to Tex. Bus. & Com. Code § 302.302(a) and (d);

h. An injunction prohibiting Defendants and their affiliates, agents, and other persons or entities acting on Defendants’ behalf from making calls using an artificial or prerecorded voice to any cellular telephone number without prior express written consent, and requiring Defendants to cease all telemarketing communications made in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) and to institute the policies, training, recordkeeping, and caller-identification practices required by law, pursuant to 47 U.S.C. §§ 227(b)(3)(A) and 227(c)(5)(A);

i. An award of reasonable attorneys’ fees and costs to the extent permitted by law;

j. Pre-judgment and post-judgment interest to the extent permitted by law; and

k. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: **November 3, 2026**

Respectfully submitted,

**LAVIAN, P.C.**

By: *<u>/s/ Ilan Lavian</u>*
Ilan Lavian (SBN 354592)
10680 W. Pico Blvd., Suite 270
Los Angeles, CA 90064
Telephone: (213) 212-3036
ilan@lavianpc.com

**GOLD LAW, P.A.**
Christopher Gold
Florida Bar No. 088733
(pro hac vice application forthcoming)
350 Lincoln Road, 2nd Floor
Miami Beach, FL 33139-3154
Telephone: (305) 900-4653
chris@chrisgoldlaw.com

*Attorneys for Plaintiff and the Proposed Classes*